UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**NICHOLAS LAUDANI,**      Chapter 13
    Debtor      Case No. 13-12362-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

**NICHOLAS LAUDANI,**
    Plaintiff
v.      Adv. P. No. 13-1416
**WELLS FARGO N.A., as Certificate
Trustee (not in its individual capacity
but solely as certificate trustee) in Trust
for Registered Holders of VNT Trust
Series 2010-2, and
DOONAN, GRAVES & LONGORIA, LLC,**

    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matter before the Court is the Motion to Dismiss the Debtor's Amended Complaint filed by Wells Fargo N.A., as Certificate Trustee (not in its individual capacity but solely as certificate trustee) in Trust for Registered Holders of VNT Trust Series 2010-2 ("Wells Fargo"). Nicholas Laudani (the "Debtor") filed an Objection to the Motion to

1

Dismiss. The Court heard the Motion on January 13, 2014, directed the parties to file additional briefs, and took the matter under advisement.

The issue presented is whether, in view of a Settlement Agreement and a release and waiver of claims contained in a Loan Modification Agreement, the Debtor, in his Amended Complaint, failed to plead factual content that would allow this Court to draw a reasonable inference that Wells Fargo is liable for the misconduct alleged. The Court accepts all allegations in the Amended Complaint as true and drawsing all reasonable inferences in favor of the Debtor. *See* Nickless v. HSBC Bank USA (In re Marron), 499 B.R. 1, 4 (D. Mass. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). *See also* Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b).

## II. BACKGROUND[1]

The Debtor filed a Chapter 13 petition on April 24, 2013 due to an imminent foreclosure sale of his home. This is his second Chapter 13 case in the last six years. On amended Schedule A-Real Property, the Debtor listed 29 Beech Glenn Street, Roxbury, Massachusetts, a three-family home (the "Property"), with a current value of $304,000, subject to a secured claim in the sum of $228,755. On amended Schedule D-Creditors holding Secured Claims, the Debtor listed Well Fargo as the holder of a claim in the sum

---

[1] The Court may take judicial notice of its docket. *See* In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir.1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

of $220,000, as well as the Massachusetts Department of Revenue with a tax lien in the sum of $6,655. Although the Property is income producing, the Debtor merely listed "Lease with tenants in 3-family home Landord [sic]," without identifying the lessees on Schedule G-Executory Contracts and Unexpired Leases. On Schedule I-Current Monthly Income of Individual Debtor(s), he listed income from real property in the sum of $2,850 and total income in the sum of $6,016.67, including income from employment as a cab driver and as a musician. On Schedule J-Current Expenditures of Individual Debtor(s), the Debtor listed his monthly home mortgage payment in the sum of $1,477.12, and monthly net income of $2,232.55. Notably on Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, the Debtor indicated that his monthly disposable income is negative (i.e, -$2,867) and his applicable commitment period is three years.

On June 3, 3013, the Debtor filed a three-year Chapter 13 Plan in which he provided for a monthly payment of $2,181, listed mortgage arrears to Wells Fargo in the sum of $48,711.96, although in Count I of his Amended Complaint discussed below, he sought a determination that "the correct amount of prepetition arrears is $42,807.48." The Debtor also provided for direct payment of "[a]ll post-petition payments on mortgages [sic]."

On August 30, 2013, Wells Fargo (through its servicer, Franklin Credit Management Corporation) filed a proof of claim alleging that the amount of its claim was $286,996.39, including $96,287.35 in arrears. On September 2, 2013, the Debtor filed an objection to the proof of claim, stating, in part, that "[t]he Modification . . . provides for a monthly payment

3

is [sic] $1,476.12, but waives collection of any escrow for taxes and insurance." In other words, the Debtor averred that the monthly installment payments required under the Loan Modification Agreement consisted solely of principal and interest payments with no escrow component. Wells Fargo filed a Response to the Debtor's objection, observing that its version of the Loan Modification Agreement provided for an escrow. On November 17, 2013, the Debtor withdrew his objection to the proof of claim in open court, having conceded that his version of the Loan Modification Agreement did not contain the parties' final expression of their agreement and that the version presented to the Court by Wells Fargo was correct.

On August 24, 2007, the Debtor filed his first Chapter 13 case, Case No. 07-15355. In that case, the Debtor litigated issues respecting a mortgage he granted to Tribeca Lending Corporation ("Tribeca") and serviced by Franklin Credit Management Corporation ("Franklin"), commencing an adversary, Adv. P. No. 07-1433, on December 4, 2007. *See* Laudani v. Tribeca Lending Corp. (In re Laudani), 401 B.R. 9 (Bankr. D. Mass. 2009). On July 1, 2010, the Debtor, Tribeca and Franklin executed a "Stipulation of Settlement" in which they indicated that they would "execute a Settlement Agreement and Release consistent with the terms of this Stipulation." The parties also executed, on July 26, 2010, a Stipulation of Dismissal with prejudice of the adversary proceeding.

Following resolution of the adversary proceeding, the Debtor voluntarily converted his Chapter 13 case to a case under Chapter 7 on August 10, 2010, after execution of the Settlement Agreement and the Loan Modification Agreement, discussed below. The

4

Chapter 7 Trustee filed a Report of No Distribution on October 12, 2010, and the Court entered an order of discharge on December 12, 2010; the case was closed on March 9, 2011.

### III. THE FIRST AMENDED COMPLAINT

According to the Debtor, under the Settlement Agreement and the Loan Modification Agreement, which is dated June 17, 2010, the principal balance of his mortgage loan from Tribeca was determined to be $222,000; the interest rate was fixed at 6.5%; and the term was established at 26 years commencing June 1, 2010. The Loan Modification Agreement, which was not recorded, provided for a monthly payment of $1,476.12 for principal and interest. It also provided for an escrow payment of $740.97, for a total payment of $2,217.09.[2]

In his Amended Complaint, the Debtor states that "[f]or various reasons," he fell into arrears in payment of the modified mortgage and that, on April 1, 2013, the firm of Doonan, Graves & Longoria sent a letter to him, stating that Wells Fargo intended to foreclose the mortgage. The letter was signed by Attorney Reneau Longoria, a partner in Doonan, Graves & Longoria, LLC. In the April 1, 2013 letter, Attorney Longoria indicated that the Debtor "may be liable to the aforesaid Lender [Wells Fargo] in the case of a deficiency in the proceeds of the foreclosure sale." At the bottom of the letter the following language appeared:

---

[2] The Court finds that the Debtor is judicially estopped from challenging the applicability of the escrow payment of $740.97 as he withdrew his objection to the proof of claim filed by Wells Fargo in which he contended he was not liable for the escrow payment.

5

> No deficiency after the foreclosure sale may be pursued if you have obtained or will obtain a Chapter 7 bankruptcy discharge that covers your obligation under the note secured by the mortgage referred to above. Please be advised that this is not an attempt to collect a debt but is required pursuant to Massachusetts General Laws, Chapter 244, § 14, to foreclose the mortgage lien.

On April 3, 2013, Laudani's attorney sent a letter to Attorney Longoria, referencing Chapter 93A, demanding a Payoff Statement pursuant to Mass. Gen. Laws Ch. 182 § 54D, [sic] and calling Attorney Longoria's attention to the Loan Modification Agreement. The letter also requested a reinstatement amount.[3] According to the Debtor, Attorney Longoria responded to the April 3, 2013 letter on April 4, 2013 by providing a reinstatement amount, not a Payoff Statement, and stating the reinstatement amount was $102,319.42, including total legal fees of $6,457.89. The Debtor alleged that the itemization of installment payments in the April 4, 2013 letter was identical to that asserted by Wells Fargo in its proof of claim.[4] In addition, according to the Debtor in Count V [sic] of his Amended

---

[3] The Debtor recognized in his Amended Complaint that the statutory reference set forth in his letter was an error and that the correct citation is Mass. Gen. Laws ch. 183 § 54D.

[4] In its proof of claim, Wells Fargo set forth a claim for interest in the amount of $38,030.50, calculated at the rate of 6.5% on a principal balance of $220,863.15, for the period from October 1, 2010 through April 24, 2013. It also included a fee of $90 for non-sufficient funds fees; a claim of $452.82 for legal fees incurred on May 25, 2010; a tax advance of $27,586.52; and a charge of $515.82. It calculated the installments due as follows:

| | | |
|---|---|---|
| 8 | instalments @ 2217.09 | |
| | 10/1/10-8/1/11 | 17736.72 |
| 14 | installments @ 2001.23 | |
| | 6/1/11-7/1/12 | 28017.22 |
| 9 | installments @ 5557.51 | |

Complaint, in her letter of April 4, 2013, "attorney Longoria included a 'Notice of Important Rights', specifically referencing the Federal Fair Debt Collection Practices Act (15 USC § 1692), and also stating that 'The law firm of Doonan, Graves & Longoria LLC is acting as the debt collector, pursuant to the Federal Fair Debt Collection Practices Act.'" The Debtor also alleged that there was no disclaimer in the April 4, 2013 letter similar to the one at the bottom of the April 1, 2013 letter.

The Debtor's attorney replied to Attorney Langoria's April 4, 2013 letter the same day, disputing the accuracy of the reinstatement amount, and demanding a correction of the reinstatement amount, and referring to the Fair Debt Collection Practices Act, as well as the Chapter 93A demand made in his prior letter. The Debtor alleged that neither Attorney Longoria nor her client made any further response to the demands, but pursued foreclosure.

Attorney Longoria addressed the Debtor's April 3, 2012 letter in a three-page, single spaced letter, dated May 24, 2013, a copy of which Debtor's counsel submitted to the Court at the hearing held on January 13, 2014. Attorney Longoria attached to her letter a Loan History Summary and a letter, dated April 25, 2013 (i.e., a date 21-days from the

---

|  |  |
|---|---|
| 8/1/12-4/1/13 | 50017.59 |
| Total installment payments due as of the petition date | 95771.53 |

Close inspection of the installment dates reveals that Wells Fargo included two installments of $2,001.23 for the months of June and July of 2011, which months also were included with the eight installments for which the Debtor allegedly owes $2,217.09.

Debtor's April 3, 2013 request for a Payoff Statement), from Franklin to the Debtor setting forth a payoff amount of $287,021.39 and a per diem of $39.33.[5]

According to the Debtor, on August 30, 2013, Wells Fargo, through its servicer, Franklin, filed a proof of claim in which it alleged that it is a secured creditor and the assignee of Laudani's mortgage. It attached a number of assignments to the proof of claim, although the Debtor alleged that it did not attach all of the assignments, in violation of Local Rule 13-13(a). Based upon the foregoing factual allegations and alleged deficiencies in the assignments, the Debtor set forth the following:

> Count I – "Objection to Claim; Breach of Contract; Fair Debt Collection Practices Acts"

In support of Count I, the Debtor asserted that in reviewing the proof of claim and attachment filed with the Proof of Claim, it "appears" to him that the principal is $220,863.15, and the interest due is $38,030.50 and that, in his Chapter 13 plan, he estimated

---

[5] Franklin calculated the payoff amount as follows:

| | |
|---|---|
| Principal balance | $220,863.15 |
| Interest to 04/24/2013 | $ 38,030.50 |
| Fees | $     516.22 |
| Release Fee | $       0.00 |
| Funds owed by Borrower | $ 27,586.52 |
| Funds owed to Borrower | $       0.00 |
| Total Payoff | $287,021.39 |

The proof of claim filed on August 30, 2013 set forth a secured claim in the amount of $286,996.39.

the arrears to be about $49,000.[6] He alleged that the amount set forth in the proof of claim is incorrect because the dollar amount of installments is inconsistent with the Loan Modification Agreement and contains two additional months of installment payments. *See* note 4, *supra.* The Debtor also alleged that the proof of claim includes a charge for attorneys' fees of $425.82, incurred on May 25, 2010, although Tribeca in the Settlement Agreement waived "all accrued interest, costs, and attorney fees to June 1, 2010." The Debtor alleged that that charge must be disallowed as a breach of the Settlement Agreement. The Debtor contended that the monthly installment payment of principal and interest under the Loan Modification Agreement was $1,467.12 so that he would owe $42,807.48. As noted above, the Loan Modification Agreement executed by the Debtor expressly provides for monthly principal and interest payments of $1,476.12 and an escrow payment of $740.97 for a total payment of $2,217.09 beginning on June 1, 2010.

In addition, the Debtor alleged that, contrary to the requirements of MLBR 3007-1(c), made applicable to Chapter 13 cases by Rule 13-13, Wells Fargo, in responding to the original claim objection, did not provide any documentation supporting the assertion that it has paid out $27,586.52 in "tax advances (non escrow)," adding that it failed to attach a copy of the Loan Modification Agreement to its proof of claim or evidence of proof of compliance with 12 U. S. C. § 2609, pertaining to the administration of escrow accounts.

In sum, the Debtor alleged that, by attempting to collect money, pre-petition, which

---

[6] This estimate is based on a principal and interest payment of $1,476.12 and does not include the escrow payment of $740.97.

9

was not due under the terms of the Settlement Agreement and Loan Modification Agreement, Wells Fargo has breached the contract consisting of the Settlement Agreement and Loan Modification Agreement, as well as the Massachusetts and/or Federal Fair Debt Collection Practices Acts. Accordingly, the Debtor sought a finding that the correct amount of prepetition arrears is $42,807.48; that the Court reduce that amount by such damages as may be awarded on the other counts of this Amended Complaint; together with such other relief as to the court may grant.

Count II - Chapter 93A and Mass. Gen. Laws ch. 183 § 54D

Specifically, in Count II, the Debtor alleged that the failure of the defendants to provide a Payoff Statement is a violation of Chapter 183 § 54D, which provides for statutory damages in the amount of $500 or such greater amount as constitutes actual damages, plus reasonable attorney's fees and costs. He added that providing an incorrect Payoff Statement is the same as providing no Payoff Statement at all. Thus, he alleged that the defendants' actions were unfair and deceptive within the meaning of Chapter 93A. He sought damages in the amount of statutory damages or such greater amount as may be proven, plus attorney's fees and costs.

Count III - The Servicer Act

Pursuant to Count III, the Debtor alleged a violation of the Servicer Act, 12 U.S.C. § 2605(e) because his April 3, 2013 letter constituted a Qualified Written Request ("QWR") within the meaning of the statute. In his view, the QWR pointed out errors in the Reinstatement letter, and neither Attorney Longoria nor her client corrected the account

10

nor explained why they believed the account was correct, but persisted in foreclosure. He alleged that that failure caused him damage because he was required to retain an attorney and file a bankruptcy case in order to resolve the issues.

>    Count V [sic] - Fair Debt Collection Practices Acts; Violation of Discharge Injunction

>    Pursuant to Count V (the Debtor omitted a Count IV), the Debtor alleged a violation

of the Fair Debt Collection Practices Acts and violation of the discharge injunction. He asserted that the defendants are "debt collectors" within the meaning of the Massachusetts and Federal Fair Debt Collection Practices Acts. The Debtor recognized that Attorney Longoria, in her April 1, 2013 letter included the following language:

> … for the whole or part, of which [note] you may be liable to the aforesaid Lender in case of a deficiency in the proceeds of the foreclosure sale.
>
> ***
>
> No deficiency after the foreclosure sale may be pursued if you have obtained or will obtain a Chapter 7 bankruptcy discharge that covers your obligation under the note secured by the mortgage referred to above. Please be advised that this is not an attempt to collect a debt but is required pursuant to Massachusetts General Laws, Chapter 244 §14, to foreclose the mortgage lien.

According to the Debtor, notwithstanding the disclaimer, foreclosure of a mortgage is an attempt to collect a debt. In addition, he references Attorney Longoria's April 4, 2013 letter in which she included a "Notice of Important Rights," specifically referenced the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and stated "The law firm of Doonan, Graves & Longoria LLC is acting as the debt collector, pursuant to the Federal Fair Debt Collection Practices Act." In view of the foregoing, the Debtor maintains that because he

11

received a discharge in his first bankruptcy case and did not reaffirm the mortgage debt during that case with notice to both Franklin and Tribeca, "the defendants misrepresented the amount, validity and character of the debt they were attempting to collect, and their right to collect it (by way of the various mortgage assignments), and thereby violated both the Federal and Massachusetts Fair Debt Collection Practices Acts," as well as the discharge injunction by asserting personal liability for the promissory note even though such liability had been extinguished. Thus, the Debtor maintained he is entitled to damages for violation of the discharge injunction, plus attorney's fees and costs.

**IV. THE MOTION TO DISMISS**

Wells Fargo observes that in his four-count Amended Complaint, the Debtor asserts the following relief or causes of action: objection to claim, breach of contract, violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., violation of Mass Gen. Laws ch. 93A, violation of Mass. Gen. Laws ch. 183, § 54D, violation of the Servicer's Act, 12 U.S.C. § 2605(e), and violation of the discharge injunction. In addition, the Court observes that the Debtor has alleged that Wells Fargo failed to comply with 12 U.S.C. § 2609 of the Real Estate Settlement Procedures Act pertaining to escrow deposits and is seeking declaratory judgment that the correct amount of prepetition arrears is $42,807.48.

Wells Fargo seeks dismissal of all claims based upon the release and waiver of claims set forth in the Loan Modification Agreement, which provides the following:

> In consideration of the modification of certain provisions of the Note and Security Instrument, all as herein provided, and other benefits received by Borrowers hereunder, Borrowers hereby RELEASES, RELINQUISHES and

> forever DISCHARGES Lender, as well as its predecessors, successors, assigns, agents, officers, directors, employees and representatives, of and from any and all claims, demands, actions and causes of action of an and every kind of character, whether known or unknown, present or future, which Borrowers may have against Lender, and its predecessors, successors, assigns, agents, officers directors, employees and representatives, arising out of or with respect to any and all transactions relating to the Note and Security Instrument occurring prior to the date hereof, including any loss, cost or damage, of any kind or character, arising out of or in any way connected with or in any way resulting from the acts, actions or omissions of Lender, and its predecessors, successors, assigns, agents, officers, directors, employees, and representatives, including any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, b ad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortuous interference with contractual relations, tortuous interference with corporate governance or prospective business advantage, breach of contract, deceptive trade practices, libel, slander, conspiracy or any claim for wrongfully accelerating the Note or wrongfully attempting to foreclose on any collateral relating to the Note, but in each case only to the extent permitted by applicable law.

In addition, Wells Fargo maintains the Debtor does not have a private right of action for an alleged violation of the discharge injunction, citing <u>Bessette v. Avco Fin. Servs., Inc.</u>, 230 F.3d 439, 444 (1st Cir. 2000), *cert. denied,* 532 U.S. 1048 (2001). In its Supplemental Brief it also cites <u>Tenczar v. Gable (In re Tenczar)</u>, 466 B.R. 32, 36-37 (Bankr. D. Mass. 2012); and <u>McDonald v. Norwest Fin., Inc. (In re McDonald)</u>, 265 B.R. 3, 8 (Bankr. D. Mass. 2001)**.**

**V. DISCUSSION**

Wells Fargo's Motion to Dismiss is predicated in large part on a broad reading of the release and waiver provision set forth in the Loan Modification Agreement. The Debtor admits that the authenticity of the Agreement is not disputed and is sufficiently referred

13

to in the Amended Complaint so that it may be considered on the present motion. *See* Hogan v. Eastern Enterprises/Boston Gas, 165 F.Supp.2d 55, 58 (D. Mass. 2001).

As the Debtor correctly recognizes, "[i]n Massachusetts, contract interpretation is in the first instance a matter of law for the court." *See* Artuso v. Vertex Pharms. Inc., 637 F.3d 1, 5-6 (1st Cir. 2011) (citing Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. 29, 878 N.E.2d 952, 958–59 (2008)) "Unless the court determines that an ambiguity exists, 'the terms of an employment agreement must be deduced, construed, and enforced as written.'" Id. at 6 (citing Cochran v. Quest Software, Inc., 328 F.3d 1, 7 (1st Cir. 2003)).

While Wells Fargo maintains that the Debtor released all claims including future claims the Debtor maintains that the release and waiver relate only to actions and events that transpired prior to the making of the contract, pointing to the seventh line of the paragraph 11 in which the Loan Modification Agreement provides that the release extends only to claims "arising out of or with respect to any and all transactions relating to the Note and Security Instrument occurring prior to the date hereof …"

This Court interprets the Loan Modification Agreement in the same manner as the Debtor. If surplus language and clauses are removed, the release provides:

> In consideration of the modification of certain provisions of the Note and Security Instrument, all as herein provided, and other benefits received by Borrowers hereunder, *Borrowers hereby RELEASES, RELINQUISHES and forever DISCHARGES Lender . . . of and from any and all claims, demands, actions and causes of action of any and every kind of character, whether known or unknown, present or future, which Borrowers may have against Lender, . . ., arising out of or with respect to any and all transactions relating to the Note and Security Instrument occurring prior to the date hereof,* including any loss, cost or damage, of any kind or character, arising out of or in any way connected with or in

14

> any way resulting from the acts, actions or omissions of Lender . . ., including . . . any claim for wrongfully accelerating the Note or wrongfully attempting to foreclose on any collateral relating to the Note, but in each case only to the extent permitted by applicable law.

(emphasis supplied). Thus, this Court concludes that the Debtor is not barred from asserting meritorious causes of action relating to the Loan Modification Agreement or the amount owed thereunder. A contrary conclusion would permit a successor to the Lender to erroneously calculate the amount due under the Loan Modification Agreement without any recourse on the part of the Debtor.

With respect to the Debtor's cause of action for violation of the discharge injunction, the Debtor maintains that he can rely upon 11 U.S.C. § 105, although he failed to mention that section of the Bankruptcy Code in his Amended Complaint. He relies upon the decision in Bessette in which the First Circuit stated:

> Whether there exists a private right of action for damages or sanctions under § 524 is a question of first impression in the First Circuit. Courts that have considered this question are divided. *Compare* Malone v. Norwest Fin. California, Inc., 245 B.R. 389, 395–98 (E.D. Cal. 2000) (finding an implied right of action); Molloy v. Primus Automotive Fin. Servs., 247 B.R. 804, 819–20 (C.D. Cal. 2000) (same), *with* Transamerica Fin. Servs. v. Danney, No. 99–228–P–H, 1999 WL 33117201, *3 (D. Me. Dec.23, 1999) (recommendation of magistrate judge affirmed by the district court) (relying on the district court's opinion in Bessette ); Cox v. Zale Delaware, Inc., No. 97 C 4464, 1998 WL 397841, at *2–*4 (N.D. Ill. July 13, 1998); Pereira v. First North Am. Nat'l Bank, 223 B.R. 28, 30 (N.D. Ga.1998); Lenior v. GE Capital Corp. ( In re Lenior), 231 B.R. 662, 673–74 (Bankr. N.D. Ill. 1999) (holding that § 524 does not create a private right of action). We see no reason to jump into the fray with the complex analysis required by Cort v. Ash when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, § 105(a).

230 F.3d at 444. Since the decision in Bessette, the Third, Sixth and Seventh, and Ninth

15

Circuits *see* Joubert v. ABN AMRO Mortg. Group, Inc., 411 F.3d 452 (3d Cir. 2005); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002); Cox v. Zale Delaware, Inc., 239 F.3d 910 (7th Cir. 2001); Pertuso v. Ford Motor Credit Co., 233 F.3d 417 (6th Cir. 2000), have determined that there is no private right of action under 11 U.S.C. § 524 and the Debtor's remedy is a contempt motion under section 524(a)(2), not an adversary proceeding. *See* Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1188 (9th Cir. 2011); Tenczar v. Gable (In re Tenczar), 466 B.R. 32, 37 (Bankr. D. Mass. 2012).

In view of the weight of authority, the Court dismisses Count V to the extent the Debtor has attempted to assert a cause of action for violation of the discharge injunction. If the Debtor can establish a violation of the discharge injunction, his remedy is a motion for contempt filed in the main case.

Although this Court cannot construe the release and waiver provision set forth in the Loan Modification Agreement in the manner argued by Wells Fargo, the Court would be remiss if it did not comment on the deficiencies in the Debtor's Amended Complaint. Indeed, having ceased making mortgage payments in May of 2011 and thus breaching the Loan Modification Agreement himself, the Debtor appears to have adopted an approach that can best be described as "the best defense is a good offense." While a review of Wells Fargo's proof of claim would suggest that there may be errors in the computation of the installment payment amounts (specifically, the inclusion of two additional months of payments and the installment amounts of $5,557.51), there can be no doubt that the Debtor owes more than 29 months of principal and interest payments, as the Loan Modification

Agreement expressly provides for monthly payments of $2,2217.09, including escrow payments of $740.97. Accordingly, the Debtor's assertion that the correct amount of prepetition arrears is $42,807.48 is frivolous. Moreover, although the Debtor alleged that Wells Fargo violated 12 U.S.C. § 2609 with respect to the lack of documentation for $27,586.52 in tax payments, the Debtor did not allege that he, in fact, made any payments for real estate taxes and property insurance after May 2011, or that Wells Fargo, in fact, did not make the payments. In addition, the Loan History Summary, though not attached to the proof of claim, establishes such payments by Wells Fargo.

In addition, although the Debtor complains that he did not receive a Payoff Statement, the letter to the Debtor from Franklin, dated April 25, 2013, attached to Attorney Longoria's letter dated May 24, 2013 and submitted to the Court at the hearing on the Motion to Dismiss, contains the notation that "Payoff figures have been requested on the loan for the borrower and property described below" and contains a payoff amount of $287,021.39. Accordingly, the allegation in the Debtor's Amended Complaint that he did not receive a Payoff Statement was untrue. While the Debtor may dispute the precise amount he owes Wells Fargo, Count II and III of his Amended Complaint would appear to lack merit and may be frivolous, as the assertion that an incorrect Payoff Statement is the same as providing no Payoff Statement does not appear to be supported by the plain language of the statute, see Mass. Gen. Laws ch. 183, § 54D, and the payoff amount set forth in Franklin's April 25, 2013 letter does include the questionable installment payment amounts or an excess number of installment payments.

17

## VI. CONCLUSION

In view of the foregoing, the Court concludes that Wells Fargo failed to satisfy its burden under Ascroft v. Iqbal, 556 U.S. at 678, and Bell Atlantic Corp. v. Twombly, 550 U.S. at 556 with respect to the entirety of the Debtor's Amended Complaint. Accordingly, the Court shall enter an order allowing in part and denying in part the Motion of Wells Fargo to Dismiss. The Court also shall enter an order requiring the Debtor to further amend his Amended Complaint to take into account the document he submitted to the Court, to include a copy of his Ch. 93A demand letter, and to delete the cause of action for violation of the discharge injunction.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 3, 2014